PEOPLE v VAUGHN

Docket No. 292385. Submitted December 15, 2010, at Detroit. Decided December 28, 2010, at 9:05 a.m.

Joseph L. Vaughn was convicted of two counts of assault with intent to do great bodily harm less than murder, possession of a firearm by a felon, and possession of a firearm during the commission of a felony (felony-firearm), second-offense, after a jury trial in the Wayne Circuit Court. On the second day of trial, defendant moved to suppress a statement he made to police officers at his home shortly before his arrest, asserting it had been made during improper custodial interrogation. The court, Prentis Edwards, J., denied the motion. Defendant appealed.

The Court of Appeals *held*:

1. The prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of the warnings set forth in *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). However, a police officer is only required to give the warnings when a suspect is in custody. To determine whether a defendant was in custody at the time of the interrogation, courts must examine all of the circumstances surrounding the interrogation and determine whether a reasonable person would have felt at liberty to terminate the interrogation and leave. The trial court did not err when it determined that defendant was not in custody because the police officers questioned defendant in his own home after having been invited in by defendant's mother, the officers had not drawn weapons and were not wearing uniforms, they did not order defendant to leave the basement, they did not handcuff defendant, and defendant's mother was present when the officers questioned defendant.

2. Defendant was not deprived of his right to a public trial when the trial court closed the courtroom to the public during jury voir dire. A trial court may not close the courtroom to the public unless the party seeking closure advances an overriding interest that is likely to be prejudiced and the trial court considers all reasonable alternatives to closing the proceeding. However, the failure of the defendant to timely assert the right to a public trial

forecloses the later grant of relief. Because defendant's trial counsel did not object to the trial court's decision to close the courtroom to the public during the selection of his jury, defendant waived any objection to the decision.

3. Defendant was not denied the effective assistance of counsel. There was no showing that the two jurors that defendant argued should have been questioned further were biased against defendant, there was no basis to quash the information after a third preliminary hearing was held because additional evidence was presented then, alibi witnesses would not have changed the outcome of the trial because defendant had admitted that he had been outside when the shooting occurred, and defendant did not meet his burden of showing that defense counsel's failure to challenge the court's decision to close the courtroom to the public during voir dire was not sound trial strategy. Defendant failed to show that his trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.

Affirmed.

CONSTITUTIONAL LAW — RIGHT TO PUBLIC TRIAL — NECESSITY OF TIMELY OBJECTION.

A trial court may not close the courtroom to the public unless the party seeking closure advances an overriding interest that is likely to be prejudiced and the trial court considers all reasonable alternatives to closing the proceeding; however, the failure of the defendant to timely assert the right to a public trial forecloses the later grant of relief.

*Michael A. Cox,* Attorney General, *B. Eric Restuccia,* Solicitor General, *Kym L. Worthy,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Thomas M. Chambers,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Randy E. Davidson*) for defendant.

Before: M. J. KELLY, P.J., and K. F. KELLY and BORRELLO, JJ.

Per Curiam. Defendant Joseph Lashawn Vaughn appeals as of right his jury convictions of two counts of assault with intent to do great bodily harm less than murder, MCL 750.84, possession of a firearm by a felon, MCL 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), second-offense, MCL 750.227b. The trial court sentenced defendant to serve 3½ to 10 years in prison for each of the assault convictions, to serve 2 to 5 years in prison for the felon-in-possession conviction, and to serve 5 years in prison for the felony-firearm conviction. On appeal,[1] defendant argues that the trial court erred when it denied his motion to suppress the statements that he made to police officers shortly after the incident at issue and erred when it closed the courtroom to the public during jury voir dire. He also argues that his trial counsel did not provide effective assistance and that his appeal has been prejudiced by a missing or incomplete record. These errors, he maintains, deprived him of a fair trial. We conclude that there were no errors that warrant relief. Accordingly, we affirm.

## I. BASIC FACTS

This case arises from a shooting that occurred late at night in June 2002.[2] Emmitt Smith, who was a retired police officer, testified that he picked up his wife from work and arrived back at his home at about 11:45 p.m.

---

[1] Defendant filed three separate briefs on appeal. His appellate counsel filed a brief on appeal and later moved for permission to add an additional claim of error in a supplemental brief, which this Court granted. See *People v Vaughn,* unpublished order of the Court of Appeals, entered December 6, 2010 (Docket No. 292385). Defendant also filed a brief on his own behalf. See Administrative Order No. 2004-06, Standard 4.

[2] The jury convicted defendant in January 2003, but defendant absconded and the trial court was not able to sentence him until May 2009.

Sometime shortly thereafter, he saw a car parked in front of his home. The tail end of the car was blocking his driveway and there was a person crouched down in the passenger side with a hat over his or her head. Smith said he walked over to his neighbor's house and called to him through an open window.

Terrance Haynes testified that he was Smith's neighbor and that he was watching television at around midnight on the night at issue when Smith came over and beckoned to him through an open window. Haynes went out and spoke with Smith on the porch. Smith said he asked Haynes if he knew the people in the car, and he responded that he did not. Haynes said that he saw a person in the car's front passenger seat and that the person was hunched down. Haynes and Smith talked for a while about other things, and Smith said he wanted to "see what's going on" with the car. Smith then walked toward the car.

Smith said that he approached the car parked in front of his house while his neighbor walked toward his own car. Smith noticed that the person in the car was a woman, and he asked her if anything was wrong. He had a brief conversation with the woman and then turned to walk away. At this point, he saw a black man dressed in dark clothing—dark shorts and a dark shirt—emerge from a nearby alley with a revolver. He walked toward Smith and Haynes while holding his gun and stated, "[W]hat are you niggas doing by my mother-fucking car." Smith told Haynes to get down. The man with the revolver began to fire at Smith and Haynes, and Smith returned fire. Smith said the man fired two or three shots and ran into the street. He turned and fired at Smith after getting to the other side of the street, and Smith again fired back. The man continued to run away and disappeared down a driveway.

The woman got out of the car and disappeared around the end of the block. The police arrived just minutes later.

Michael Crosby testified that he was a police officer working on the night at issue with officers Lee Huelsenbeck and Christopher Staton. He received a call of shots fired at about 10 minutes after midnight that night and responded to the scene within 5 minutes. Crosby spoke with Smith at the scene and then ran a check on the plates on the car in front of Smith's house. The car belonged to defendant, and his address was just a few blocks away. Crosby said that he and his partners then went to defendant's house.

Huelsenbeck testified that defendant's mother answered the side door and, after he asked if defendant was home, she let them in. He said they came in onto a landing. The landing led up a few stairs to the kitchen, and there was also a flight of stairs that led to the basement. Huelsenbeck stated that defendant was at the bottom of the stairs "sweating profusely." Defendant was wearing blue shorts and a black shirt. Crosby said he asked defendant to come up. Defendant came up the stairs, and Crosby noticed that he was sweating heavily and was breathing hard. They went into the kitchen, and Crosby asked defendant where he had just come from. Defendant stated that "he was around the corner and someone tried to steal his car and shot at him several times." At that point Crosby arrested defendant.

## II. MOTION TO SUPPRESS STATEMENTS

### A. STANDARDS OF REVIEW

We first address defendant's argument that the trial court erred when it denied his motion to suppress the statement that he made to the police officers at his

home shortly after the shooting. Specifically, defendant argues that the trial court erred when it determined that he was not in custody when he made the statement and, accordingly, was not entitled to be advised of his constitutional rights, as required under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). This Court reviews for clear error the factual findings underlying a trial court's decision on a motion to suppress. *People v Herndon*, 246 Mich App 371, 395; 633 NW2d 376 (2001). However, this Court reviews de novo, as a question of law, whether the facts show that defendant was in custody and entitled to *Miranda* warnings. *Id.*

### B. ANALYSIS

In *Miranda*, the Supreme Court of the United States determined that the coercive nature of custodial interrogations implicated a defendant's Fifth Amendment right to be free from compelled self-incrimination. See *Miranda*, 384 US at 458 ("Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice."). In order to ensure that a defendant's statements were not the result of coercive interrogation techniques, the Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Id.* at 444. Accordingly, before conducting a custodial interrogation, the interrogating officer must advise the suspect of certain fundamental rights:

He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. [*Id.* at 479.]

"[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.* However, the Court limited the requirement to custodial interrogations—that is, interrogations that have a heightened risk of improper coercion. *Id.* at 444. Thus, a police officer is only required to give the warnings when a suspect is in custody. See *Stansbury v California*, 511 US 318, 322; 114 S Ct 1526; 128 L Ed 2d 293 (1994).

In assessing whether a defendant was in custody at the time of the interrogation, courts must examine " 'all of the circumstances surrounding the interrogation' and determine 'how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.' " *Yarborough v Alvarado*, 541 US 652, 663; 124 S Ct 2140; 158 L Ed 2d 938 (2004), quoting *Stansbury*, 511 US at 322, 325. A key question is whether, under the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave—that is, was there a formal arrest or a restraint on freedom of movement of the degree associated with formal arrest. *Yarborough*, 541 US at 663.

Here, the trial court did not err when it determined that defendant was not in custody. The police officers went to defendant's house to investigate whether defendant had any involvement in the shooting. Although the officers entered defendant's home, they did so with defendant's mother's permission. Fur-

ther, there is no evidence that the police had their weapons drawn or were otherwise asserting control over the scene. Indeed, the officers were in plain clothes. When the police entered defendant's home, at least two of the officers saw defendant at the foot of the basement steps, and Crosby asked him to come up to the kitchen. There is no evidence that Crosby ordered defendant to come up or otherwise acted in a way that would give the impression that defendant was not free to disregard the request. The officers also questioned defendant in his own home rather than in a formal police setting. See *People v Coomer*, 245 Mich App 206, 220; 627 NW2d 612 (2001) (noting that an interrogation at a suspect's home is usually viewed as noncustodial). They did not handcuff defendant or otherwise restrict his movement. Finally, defendant's mother was present with him when the police officers questioned him. Under the totality of these circumstances, we cannot conclude that a reasonable person would not have felt at liberty to discontinue the interrogation and leave. *Yarborough*, 541 US at 663.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

#### A. STANDARDS OF REVIEW

Defendant also argues that his trial counsel was constitutionally ineffective. Specifically, he argues that his trial counsel should have challenged two jurors during voir dire, should have called two alibi witnesses, and should have moved to quash the information. Because there was no evidentiary hearing before the trial court, our review is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002).

### B. THE APPLICABLE LAW

To establish ineffective assistance of counsel, defendant must show that his trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *People v Yost*, 278 Mich App 341, 387; 749 NW2d 753 (2008). This Court presumes the effective assistance of counsel and defendant bears a heavy burden of proving otherwise. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002).

### C. THE FAILURE TO CHALLENGE JURORS

Defendant first argues that his trial counsel was ineffective for failing to challenge two jurors who expressed an interest in going home or at least for failing to question these jurors further. Toward the end of voir dire, defendant's trial counsel asked the potential jurors if they could all be fair. After this, he promised them that he had only one more question. Defendant's trial counsel then asked if any of them would like to go home:

> I've got some get out of jury service tickets in my pocket. I can get you out of here now. Tell me who don't want to be here. You don't need to have no reason for it. Doesn't have to be a good reason. You just don't feel like being here. Mr. Barnett, I want to go home. This is your shot. Serve or go home.
>
> Who wants to go home?

Four potential jurors raised their hands and indicated they would like to go home. After a recess, the prosecutor used a peremptory challenge to unseat one of the four jurors, and defendant's trial counsel used a

peremptory challenge to unseat another of the four. He did not seek to excuse the remaining two jurors. Defendant's trial counsel indicated that he was "satisfied with this jury, your Honor," and the jury was empanelled.

Defendant argues that his trial counsel's failure to remove, or at least question, the two other jurors could not be deemed a matter of trial strategy. Rather, seating the jurors, without first questioning whether they could be fair, resulted in a structural defect because they may have been biased and may have lacked the ability to judge fairly. Defendant cites several cases to support his position, but they are all distinguishable. In those cases, the prospective jurors expressed clear reservations about their ability to judge the defendant fairly. See *State v Chastain*, 285 Mont 61; 947 P2d 57 (1997), overruled by *State v Herrman*, 316 Mont 198; 70 P3d 738 (2003); *Hughes v United States*, 258 F3d 453 (CA 6, 2001); *Franklin v Anderson*, 434 F3d 412 (CA 6, 2006). Here, the prospective jurors simply revealed what many of their peers likely felt—that they would gladly be relieved of jury duty. Neither juror in this case indicated any potential prejudice or animus toward defendant.

In *People v Unger*, 278 Mich App 210, 257; 749 NW2d 272 (2008), the defendant argued that counsel was ineffective for failing to challenge an allegedly biased potential juror who had admitted that he had discussed the defendant's case with others and had read various newspaper accounts of the case. However, further questioning revealed that the juror had not read anything that would influence his decision. He confirmed that he could " 'be fair and impartial to both sides.' " *Id.* This Court concluded that defendant's trial counsel was not ineffective:

> [D]efendant's trial counsel was not ineffective for failing to challenge the potential juror in question. Perhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions. However, as a reviewing court, we "cannot see the jurors or listen to their answers to voir dire questions." For this reason, this Court has been disinclined to find ineffective assistance of counsel on the basis of an attorney's failure to challenge a juror. [*Id.* at 258 (citations omitted).]

It is clear from the record in this case that neither juror expressed any bias or inability to judge the case fairly. And the fact that the jurors would rather not serve on the jury did not establish a ground for their dismissal. Absent a showing of actual bias against defendant, defense counsel's decision to keep the jurors was a matter of trial strategy, which we will not second-guess. *Id.*

### D. FAILURE TO MOVE TO QUASH THE INFORMATION

Defendant argues that his counsel was also ineffective for failing to move to quash the information. A preliminary hearing was initially held in June 2002, at which time the trial court dismissed the case for lack of probable cause. A second preliminary hearing was adjourned at the prosecutor's request. Defendant was ultimately bound over after a third preliminary examination in September 2002. Defendant argues that there was no new evidence at the third scheduled hearing and that the prosecution was "judge shopping." A review of the record refutes this claim.

At the first preliminary hearing, only Smith testified. Because Smith failed to identify defendant as the shooter, the prosecutor admitted that the evidence was insufficient to bind defendant over for trial. However, at the September 2002 hearing, in addition to Smith, Huelsenbeck

testified about the circumstances surrounding the officers' investigation and defendant's arrest. Thus, contrary to defendant's contention, the prosecution presented new evidence at the final preliminary hearing, and that evidence established defendant as the man who shot at Smith and Haynes. It follows that defendant's trial counsel's decision not to move to quash the information on this basis did not fall below an objective standard of reasonableness under prevailing professional norms. *Yost*, 278 Mich App at 387.

### E. FAILURE TO CALL ALIBI WITNESSES

Defendant also argues that counsel was ineffective for failing to investigate the case and call alibi witnesses. Defendant told counsel that his car had been stolen and that he was home when the offense took place. Defendant claims that both his mother and cousin were willing to testify to this effect, but counsel never contacted them.

Defendant has failed to establish the factual predicate for his claim by providing affidavits to substantiate that the witnesses would have testified as he claims. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The decision not to call alibi witnesses is generally a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). And this Court will not second-guess that decision in the absence of any evidence that the witnesses would actually have testified as the defendant claims. *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001) (noting that this Court will not substitute its judgment for that of trial counsel on matters of trial strategy, nor assess counsel's performance with the benefit of hindsight). Finally, even if defendant had presented evidence that the witnesses would have provided an alibi, defendant would still not be entitled to relief.

Crosby and Huelsenbeck arrived at the scene of the shooting a few minutes after it occurred and quickly determined that the car in front of Smith's house belonged to defendant. They proceeded to defendant's home and found him there, sweating profusely and breathing hard. After Crosby asked defendant where he had come from, he admitted that he came from just around the corner where someone had tried to steal his car and had shot at him. Given this evidence, even if defendant's trial counsel's decision not to call these witnesses fell below an objective standard of reasonableness under prevailing professional norms, it is not reasonably probable that the decision affected the outcome. *Yost*, 278 Mich App at 387. Thus, defendant is not entitled to any relief.

### IV. RIGHT TO A PUBLIC TRIAL

#### A. STANDARDS OF REVIEW

Defendant next argues that the trial court erred when it closed the courtroom to the public during voir dire. Defendant contends that this error is structural error that automatically warrants a new trial. In the alternative, he maintains that his trial counsel's failure to object to the closing of the courtroom during voir dire constitutes ineffective assistance of counsel that warrants a new trial. This Court reviews de novo questions of constitutional law. *People v Dendel*, 481 Mich 114, 124; 748 NW2d 859 (2008).

#### B. ANALYSIS

A defendant has the right to a public trial, which includes the right to have the courtroom open to the public during jury voir dire. See *Presley v Georgia*, 558 US ___; 130 S Ct 721, 724; 175 L Ed 2d 675 (2010).

Although there are exceptions to the right, the trial court may not close the courtroom to the public unless the party seeking closure advances an overriding interest that is likely to be prejudiced and the trial court considers all reasonable alternatives to closing the proceeding. *Id.* at 724. However, this right is not self-executing: the defendant must timely assert the right. *Levine v United States*, 362 US 610, 619-620; 80 S Ct 1038; 4 L Ed 2d 989 (1960) ("Due regard generally for the public nature of the judicial process does not require disregard of the solid demands of the fair administration of justice in favor of a party who, at the appropriate time and acting under advice of counsel, saw no disregard of a right, but raises an abstract claim only as an afterthought on appeal."). Thus, the failure to timely assert the right to a public trial forecloses the later grant of relief. See *United States v Hitt*, 473 F3d 146, 155 (CA 5, 2006) ("Where a defendant, with knowledge of the closure of the courtroom, fails to object, that defendant waives his right to a public trial."); *Freytag v Comm'r of Internal Revenue*, 501 US 868, 896; 111 S Ct 2631; 115 L Ed 2d 764 (1991) (Scalia, J., concurring) (noting that review of a claim of error with regard to certain rights, such as the Sixth Amendment right to a public trial, may be foreclosed by the failure to timely assert the right); see also *Peretz v United States*, 501 US 923, 936-937; 111 S Ct 2661; 115 L Ed 2d 808 (1991) (noting that the failure to timely assert the right to have an Article III judge preside over jury voir dire forecloses the grant of relief).

Here, defendant's trial counsel did not object to the trial court's decision to close the courtroom to the public during the selection of his jury. Cf. *Presley*, 130 S Ct at 722 (noting that the defendant's trial counsel objected to the closing of the courtroom to the public).

Therefore, the error does not warrant relief. *Levine,* 362 US at 619; *Hitt,* 473 F3d at 155.

Likewise, we do not agree that defendant's trial counsel's failure to object to the closing of the courtroom constitutes ineffective assistance of counsel. In order to warrant relief premised on ineffective assistance of counsel, defendant must show that his trial counsel's decision not to object fell below an objective standard of reasonableness under prevailing professional norms and that, but for counsel's unprofessional conduct, the result of the proceedings would have been different. *Yost,* 278 Mich App at 387. Defendant's trial counsel might have reasonably concluded that proceeding with a jury voir dire that was closed to the public benefited defendant. Reasonable trial counsel might conclude that the potential jurors will be more forthcoming in their responses when the courtroom is closed, that the proceedings will be less likely to be tainted by outside influences, or might simply find the procedure preferable because it will expedite the proceedings. Defendant has failed to overcome the presumption that his trial counsel's decision was a matter of sound trial strategy. *LeBlanc,* 465 Mich at 578. Therefore, defendant is not entitled to relief.

## V. MISSING RECORD

Finally, we address defendant's argument that he has been deprived of his right to an appeal because the lower court record is missing. He also notes that the register shows that his motion to suppress his statement was granted even though the statement was used at trial. As an alternative, defendant asked this Court to remand for a hearing to reconstruct the record. This Court granted the motion for a remand, see *People v Vaughn,* unpublished order of the Court of Appeals,

entered March 18, 2010 (Docket No. 292385), and the trial court reconstructed the relevant missing portion of the record and reconciled the discrepancy between the register and the actual events below. Moreover, the record otherwise appears sufficient to address defendant's claims of error. Therefore, he is entitled to no further relief. See *People v Audison*, 126 Mich App 829, 835; 338 NW2d 235 (1983) (noting that the defendant's right to an appeal is satisfied where the surviving record is sufficient to allow evaluation of the defendant's claims).

There were no errors warranting relief.

Affirmed.