# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

STEVEN BRADLEY MACKENZIE,

      Defendant-Appellant.

UNPUBLISHED
April 26, 2016

No. 324893
Ionia Circuit Court
LC No. 2013-015962-FC

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of attempted murder, MCL 750.91, and aggravated domestic assault, MCL 750.81a(2). Defendant was sentenced to 11 to 40 years' imprisonment for attempted murder and 351 days in jail for aggravated domestic assault. The court gave defendant credit for 351 days served. For the reasons set forth in this opinion, we affirm.

## I. FACTS

Defendant and the victim were going through a divorce. The victim was staying at the couple's cottage in Clarksville while defendant was living at their marital home in Lansing. At a hearing, the divorce court determined that the victim could remain in the Lansing home during the pendency of the divorce proceedings and that defendant had seven to ten days to vacate the Lansing home. The night of that hearing, the victim awoke to defendant in the bedroom in which she was sleeping at the cottage. Defendant pinned the victim to the bed and began to repeatedly twist her head in what she believed to be an attempt to break her neck. Defendant told the victim that they were going to die there and that he could not understand how the victim could say the things about defendant that she said at the divorce hearing. Eventually, the victim was able to escape and call police.

Before trial, on April 22, 2014, defendant entered into a *Killebrew*[1] plea agreement. Under the terms of the agreement, defendant agreed to plead nolo contendere to assault with

---

[1] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

intent to do great bodily harm less than murder (AIGBH); in exchange, the prosecution dropped the attempted murder and aggravated domestic assault charges and recommended that the court sentence defendant to time served.

After accepting the plea and entering it in the record, at sentencing, the victim made a statement to the trial court requesting that the court reject defendant's plea "and to instead, sentence him to prison." The victim stated that she reviewed defendant's psychological evaluation and "it sent chills down my spine." She stated that defendant was suicidal and when he was suicidal he became violent. The victim then stated as follows:

> Your Honor, I beg you to sentence Steve to a term in prison where he can get a full psychological evaluation and treatment in a safe environment. I want him to get the help he needs and I want to be safe. I want the world to be safe. Please don't release him and instruct him to go get community mental health based treatment. That has failed in the past. You can choose a different option. Please tell him to get mental health treatment in a safe environment because he's a dangerous man.

Upon hearing the victim's statement, the court acknowledged the *Killebrew* agreement and asked, "[d]o the People have a position in this matter?" The prosecution responded as follows:

> When we fashioned this plea agreement entered we did receive the psychological evaluation that was presented from the defense. It clearly painted a different picture and some concerns which I concur are big concerns for this victim. So that did change her position. We totally understand where she's coming from with that. We do think there is a risk for him, so we completely understand what she's stating. We also understand since the time of the plea agreement, they are indicating he had another suicidal threat at the jail, just one week prior to the PSI investigation interview. These are all big red flags and big concerns for the Prosecution. These things were not in the picture at the time we made the plea agreement. We are okay with letting him withdraw his plea and going back.

Defense counsel then responded:

> [] I'm very concerned now that the Prosecutor wants to withdraw this and I'm very concerned that [the victim] is trying to make sure that my client is punished . . .

> A lot of people here are doing things that are just simply not right and if you think this report might influence you, I would suggest that you get all the psych. reports that we have before deciding to take away this deal that we worked so hard to get. *Indeed if your Honor does not follow the Killebrew, my client will seek to have a full trial on this matter.* [Emphasis added.]

* * *

I do not believe my client is a danger to anyone. If he is released today as the agreement with the People was, he will assist me as an accountant in trying to get everything organized for the divorce trial next week . . . and that's what I'm requesting your Honor to do, stick to the deal.

The trial court and defense counsel then engaged in the following exchange:

*Trial Court.* In this matter, having had an opportunity to review and reflect on the presentence investigation report as well as the comments of the victim here today and Counsel . . . this Court has to be concerned about safety and in light of - - just studies show that risk escalates in the midst of a divorce proceeding - - in light of the circumstances of this offense, I can't in good conscience, proceed with the agreement that had been reached. So I do afford Mr. MacKenzie the opportunity to withdraw his plea and will certainly afford him the right to a full trial in this matter. You've indicated he will exercise that right.

*Def. Counsel.* Okay. Your Honor . . . when my client put his plea on the record and your Honor stated on the record that if for any reason, my client was not going to be released on the 17th that he would be afforded a P.R. bond. So we are requesting that . . .

*Def. Counsel.* Your Honor, since the People are breaking the agreement, I believe my client should be entitled to that P.R. bond simply because he's been incarcerated for over 6 months now.

The case proceeded to trial. At trial, the victim testified that at some point after defendant assaulted her, she fled the house and called 911. Officers Andrew Sysko and James Yeager, of the Michigan State Police, were dispatched to the cottage. When Sysko reached the general area of the cottage, which was difficult to locate, he observed the victim sprint toward his location from a nearby wooded area. The victim was not wearing shoes and was dressed in clothing that was not appropriate for the weather. Sysko testified that the victim was frantic. She directed Sysko to the cottage and told him that her husband put his hands on her throat and twisted.

The officers approached the cottage and knocked on the door, but there was no response. Through the windows, they observed defendant lying on a couch. Eventually, they heard defendant say, "It's open," so they entered the home. Sysko then conducted a pat-down search of defendant, and Yeager swept the home for weapons.

Sysko had defendant sit down on a wooden stool or chair. Defendant was not handcuffed. Defendant stated that he was very tired and wanted to go to Community Mental Health. Sysko told him that "all in good time [they] would get to that," but Sysko's priority was to figure out what happened between defendant and the victim. Defendant stated that he wanted to die. He told Sysko that he had placed his hands on the victim's throat and choked her. Sysko asked him for clarification, "You choked her?" Defendant said that it was the first time he had placed his hands on the victim. Defendant stated that he was not under the influence of alcohol and had only taken his normal, prescribed dosage of his medication. Defendant stated that he

choked the victim because he could not understand why the victim would make up lies at the divorce proceeding. Defendant had not been at the cottage long before the incident, and he stated that he "snuck" into the residence. When asked what the victim was doing when he was choking her, defendant stated that she was fighting back. Sysko did not observe any defensive wounds on defendant. After speaking with defendant, Sysko placed defendant in handcuffs and led him out to his patrol vehicle.

Defendant testified and admitted telling Sysko that he choked the victim. Defendant explained he said this because he knew that he and the victim were struggling and that part of his hand was on part of her neck. However, he did not put his hands on her neck and exert pressure to cause her harm. He only grabbed her head to stabilize her so that they could look at each other while talking. Defendant testified that he was not forced to say anything to Sysko. The police did not handcuff defendant, and they did not yell at him. They did not physically force defendant to answer. However, defendant testified that he was told by Sysko that he had to answer their questions.

Defendant was convicted and sentenced as set forth above. This appeal ensued.

II. ANALYSIS

Defendant argues that the trial court erred when it withdrew his plea because the court failed to comply with MCR 6.310(B)(2)(a), which requires a court to inform a defendant about the sentence that it intended to impose before a defendant withdraws the plea.

We review a trial court's decision regarding the withdrawal of a plea for an abuse of discretion. *People v Billings*, 283 Mich App 538, 549; 770 NW2d 893 (2009).

Where a plea agreement "includes a non-binding prosecutorial recommendation of a specific sentence, the judge may accept the guilty plea (after consideration of the presentence report), yet refuse to be bound by the recommended sentence." *People v Killebrew*, 416 Mich 189, 209; 330 NW2d 834 (1982). "However, the trial judge must explain to the defendant that the recommendation was not accepted by the court, and state the sentence that the court finds to be the appropriate disposition." *Id.* at 207. Then, the defendant must be given the opportunity to affirm or withdraw his plea. *Id.* The procedure for a *Killebrew* plea agreement is enumerated in MCR 6.310(B), which provides in relevant part as follows:

> **(B) Withdrawal After Acceptance but Before Sentence.** Except as provided in subsection (3), after acceptance but before sentence,
>
> (1) a plea may be withdrawn on the defendant's motion or with the defendant's consent only in the interest of justice. . . .
>
> (2) the defendant is entitled to withdraw the plea if
>
>> (a) the plea involves an agreement for a sentence for a specified term or within a specified range, and the court states that it is unable to follow the agreement; the trial court shall then state the sentence it intends to impose, and provide the defendant the opportunity to affirm or withdraw the plea[.]

-4-

Defendant argues that the trial court erred when it failed to "state the sentence it intend[ed] to impose" before defendant indicated that he withdrew the plea.

At the outset, we note that defendant appears to argue that the rule requires the court to make a "personal inquiry"—as opposed to inquiring of counsel—regarding whether a defendant intends to affirm or withdraw a plea. However, there is nothing in the court rule that precludes counsel from representing defendant's position to the court and his arguments to the contrary lack merit.

With respect to the plea in this case, defendant withdrew his plea before the trial court indicated that it would not abide by the *Killebrew* sentence. Specifically, after the victim finished her statement, the trial court asked the prosecutor to comment. After the prosecutor spoke and before the trial court indicated that it would not abide by the *Killebrew* sentence, defense counsel stated, "Indeed if your Honor does not follow the *Killebrew*, my client will seek to have a full trial on this matter." Then, defense counsel answered "Okay" in the affirmative when the trial court stated, "You've indicated he will exercise that right [to withdraw his plea]," and counsel then immediately began discussing a personal recognizance bond. Thus, because defendant withdrew his plea at the outset, there was no need for the trial court to articulate what sentence it intended to impose because defense counsel had already indicated that defendant would not agree to anything other than a sentence for time served. Accordingly, defendant has not established that the court erred in accepting his request to withdraw the plea.

Next, defendant argues that he was denied the effective assistance of counsel when counsel withdrew defendant's plea, failed to explain the sentencing guidelines to defendant, and did not attempt to suppress statements that defendant made to police at his home. Because appellate counsel has not moved for a *Ginther*[2] hearing, our review is limited to mistakes apparent on the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000).

Whether a defendant was denied the effective assistance of counsel involves a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). A court's factual findings, if any, are reviewed for clear error while constitutional issues are reviewed de novo. *Id*.

The right to effective assistance of counsel extends to the plea-bargaining process. *Lafler v Cooper*, ___US___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012). To establish ineffective assistance of counsel defendant must show that counsel rendered deficient performance on an objective standard and that "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

With respect to defendant's claims of ineffective assistance regarding the withdrawal of his plea and defense counsel's alleged failure to inform defendant of the sentencing guidelines, defendant has failed to establish the factual predicate to support these arguments. *Id*. There is nothing in the record to show that defendant's withdrawal was not knowingly and intelligently made. Although defendant attaches an unsworn statement to his brief on appeal, our review is limited to mistakes apparent on the record and defendant did not move for a *Ginther* hearing or to expand the record; therefore, we cannot consider the unsworn statement. *People v Lockett*, 295 Mich App 165, 186; 814 NW2d 295 (2012).

Defendant also argues that defense counsel was ineffective for failing to move to suppress the statements he made to police officers who responded to the cottage. Defendant argues that the statements were obtained in violation of his Fifth Amendment rights as set forth in *Miranda v Arizona*, 384 US 436, 458; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

"In *Miranda*, the Supreme Court of the United States determined that the coercive nature of custodial interrogations implicated a defendant's Fifth Amendment right to be free from compelled self-incrimination." *People v Vaughn*, 291 Mich App 183, 188-189; 804 NW2d 764 (2010) aff'd in part, vacated in part on other grounds, 491 Mich. 642 (2012), citing *Miranda*, 384 US at 458. To safeguard against coercion, the *Miranda* court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 US at 444. "Accordingly, before conducting a custodial interrogation, the interrogating officer must advise the suspect of [his or her constitutional] rights." *Vaughn*, 291 Mich App at 189. "[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Miranda*, 384 US at 479. "However, the [*Miranda*] Court limited the requirement to *custodial interrogations*—that is, interrogations that have a heightened risk of improper coercion." *Vaughn*, 291 Mich App at 189, citing *Miranda*, 384 U.S. at 444 (emphasis added). "Thus, a police officer is only required to give the warnings when a suspect is in custody." *Id.*

In this case, it is undisputed that police officers did not apprise defendant of his *Miranda* rights when they questioned him inside his home. The critical issue is whether defendant was in custody for purposes of *Miranda*. To determine whether a defendant was in custody at the time he was interrogated, a court must examine "all of the circumstances surrounding the interrogation and determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *Yarborough v Alvarado*, 541 US 652, 663; 124 S Ct 2140; 158 L Ed 2d 938 (2004) (quotation marks and citations omitted). "A key question is whether, under the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave-that is, was there a formal arrest or a restraint on freedom of movement of the degree associated with formal arrest." *Vaughn*, 291 Mich App at 189 (citations omitted).

In this case, defendant allowed the officers into the cottage, which defendant had owned with the victim for 25 to 26 years. Defendant was in his own home when police questioned him. Defendant was patted-down for weapons then he sat on a chair and talked to the officers. The questioning was relatively brief and the audio recording of the interview lasted approximately 12

minutes. The officer handed defendant his glasses. The officer repeated what defendant told him so as not to use leading questions. Defendant was not handcuffed or restrained in any way during the interview. The officers did not yell at him or use physical force to obtain his statement. They refreshed defendant's glass of water, which he had been drinking. Additionally, defendant was allowed to use the restroom. Defendant testified that he was not forced to say anything during the interview. While defendant testified at trial that an officer told him that he had to speak with the officers, this testimony was not corroborated by the audio recording of the questioning. Moreover, nothing in the record supports that the officers acted in a coercive manner. Given all the circumstances, a reasonable person would not have "felt he [ ] was not at liberty to terminate the interrogation and leave." *Thompson v Keohane*, 516 US 99, 112; 116 S Ct 457; 133 L Ed 2d 383 (1995). Therefore, because defendant was not subject to custodial interrogation, *Miranda* was not implicated, *id.*, and defense counsel was not ineffective for failing to move to suppress defendant's statements. See *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003) ("[i]neffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion.")

Affirmed.

/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola