# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

KEVIN DEANDRE WARE,

      Defendant-Appellant.

UNPUBLISHED
January 9, 2018

No. 333988
Kalamazoo Circuit Court
LC No. 2015-001179-FC

Before: SWARTZLE, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant, Kevin Deandre Ware, was convicted in a jury trial of one count of armed robbery, MCL 750.529, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant appeals by right, alleging ineffective assistance of counsel. We reverse defendant's convictions and remand for a new trial.

## I. FACTS AND PROCEDURAL HISTORY

In August 2015, two men robbed TJ's Party Store in the city of Kalamazoo, Michigan. Approximately an hour and a half after the robbery, police officers conducted a traffic stop on a vehicle driven by defendant in Van Buren County. The passenger in defendant's vehicle, Kristopher Jackson, was identified as one of the robbers because his boots matched those worn by one of the robbers, as seen on the party store's video surveillance system. Once police officers removed Jackson from the vehicle, defendant fled the scene in an attempt to evade arrest. Defendant's vehicle ultimately crashed. Defendant was ejected from the vehicle, suffering injuries of such severity that he was transported to the hospital by medical helicopter. Various items stolen from the party store were found in the crashed vehicle, along with cash and a firearm matching the description of that used during the robbery. Although defendant was not wearing clothes matching those worn by the second robber as seen on the party store's video surveillance system, the clothing the second robber had worn was found in the crashed vehicle. Defendant claimed that he did not commit the armed robbery. He claimed he was simply driving a vehicle shared by multiple individuals, which accounted for the presence in the vehicle of items associated with the robbery. Jackson ultimately admitted that he was one of the robbers and was convicted for that offense. At defendant's trial, however, Jackson denied that defendant was the second robber.

Van Buren County Deputy James Lear testified that he placed defendant under arrest at the crash scene but that he did not advise defendant of his *Miranda*[1] rights. In addition, although other law enforcement officers interacted with defendant at the hospital, it is undisputed that none of those officers advised defendant of his *Miranda* rights. Kalamazoo Public Safety Department Officers Alex Wright and Caleb Leonard followed the medical helicopter to the hospital so they could interrogate defendant. They questioned him until he made incriminating statements that tied him to the party store robbery. During at least a portion of this interrogation, defendant was handcuffed to the hospital bed. Defendant testified that he was in and out of consciousness when he arrived at the hospital, that he was having difficulty breathing, that he was in a great deal of pain, and that he did not remember speaking with police in the hospital. Kalamazoo Public Safety Department Officer Luis Araujo testified that when he relieved Officers Wright and Leonard at the hospital, he did not attempt to speak to defendant because he was sleeping, and a nurse informed him that defendant was heavily medicated. Officer Araujo stood guard outside defendant's room until his supervisors advised him that defendant was no longer under arrest.

At defendant's preliminary examination, defense counsel moved to suppress the incriminating statements defendant made in the hospital. The district court granted the motion and suppressed defendant's statements, finding that defendant was placed in custody by law enforcement officers and that he was not provided with *Miranda* warnings before making the incriminating statements. Despite the success of the motion to suppress in the district court, defense counsel failed to timely file a pretrial motion to suppress defendant's incriminating statements in the circuit court. But on the first day of trial, defense counsel orally moved to suppress those statements, but the trial court denied the motion as untimely and did not hear it. The trial court specifically declined to conduct a *Walker*[2] hearing to determine the voluntariness of the incriminating statements defendant made at the hospital. Officers Wright and Leonard testified at trial regarding defendant's statements, and the jury subsequently convicted defendant of armed robbery and felony-firearm. After his conviction, defendant moved for a new trial, arguing that defense counsel was ineffective in several different ways. The trial court denied the motion for a new trial and also declined to hold a *Ginther*[3] hearing, ruling that there was an abundance of circumstantial evidence that defendant committed the armed robbery and ruling that the outcome of defendant's trial would not have been different even had his incriminating statements been suppressed.

Defendant appeals, alleging ineffective assistance of counsel. Defendant argues that defense counsel was ineffective for (1) failure to properly investigate the case, (2) failure to timely file a witness list and notice of alibi witnesses, and (3) failure to timely file a motion to suppress the incriminating statements defendant made during a custodial interrogation when he had not been given his *Miranda* warnings. Because we conclude that defense counsel's failure to

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

file a timely motion to suppress defendant's incriminating statements was objectively unreasonable in light of prevailing professional norms and because we conclude that but for counsel's error it is reasonably probable that the outcome of defendant's trial would have been different, we reverse defendant's convictions and remand for a new trial.

## II. STANDARD OF REVIEW

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). This determination requires a court to first find the facts, and then determine whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). Here, however, because the trial court declined to hold an evidentiary hearing regarding defendant's ineffective assistance claims, this Court is limited to reviewing errors apparent on the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

In addition, we review a trial court's decision to deny a motion for a new trial for an abuse of discretion. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016).

> At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome. When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment. [*People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003) (quotation marks and citations omitted).]

A trial court abuses its discretion when it chooses an outcome that falls outside the range of outcomes. *Id*. The trial court's factual findings are reviewed for clear error, while underlying questions of law are reviewed de novo. *Dimambro*, 318 Mich App at 212.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

To establish a claim of ineffective assistance of counsel, a defendant must prove that defense counsel's performance was objectively unreasonable in light of prevailing professional norms, and that but for counsel's error, it is reasonably probable that the outcome would have been different. *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303, 314; 521 NW2d 797 (1994). Effective assistance of counsel is presumed, *Strickland*, 466 US at 690, and a defendant bears a heavy burden of proving otherwise, *Trakhtenberg*, 493 Mich at 52. In doing so, a defendant must overcome a strong presumption that the challenged conduct might be considered sound trial strategy. *People v Knapp*, 244 Mich App 361, 385-386, 386 n 7; 624 NW2d 227 (2001). A defendant can only overcome the presumption by showing that counsel failed to perform an essential duty and that the failure was prejudicial to defendant. *People v Hampton*, 176 Mich

App 383, 385; 439 NW2d 365 (1989). Counsel's performance must be measured against an objective standard of reasonableness and without benefit of hindsight. *Strickland*, 466 US at 688-689; *Pickens*, 446 Mich at 430, 438.

Defendant argues that defense counsel rendered ineffective assistance because she failed to timely file a pretrial motion to suppress defendant's in-custody statements. We agree.

On the first day of trial, the prosecutor and defense counsel addressed preliminary matters with the trial court before the jury was seated. The trial court noted that earlier that morning defense counsel had filed a motion to suppress certain statements made by defendant. The prosecutor objected that the motion to suppress was untimely and that it was inappropriate for defense counsel to essentially request a *Walker* hearing on the first day of trial.[4] The trial court denied defense counsel's motion to suppress defendant's statements as untimely. We conclude that defense counsel's failure to timely file a pretrial motion to suppress defendant's custodial statements was objectively unreasonable in light of prevailing professional norms. Because defense counsel was successful in convincing the district court to suppress defendant's in-custody statements to police during the preliminary examination, she should have timely filed a motion to suppress those same statements in the circuit court. There is no sound trial strategy involved in failing to timely file such a pretrial motion. Indeed, the record indicates that defense counsel erroneously believed that a verbal motion to suppress defendant's statements, made on the first day of trial, was sufficient to place the issue before the trial court for decision.

In addition to finding that defense counsel's failure to timely file a motion to suppress defendant's in-custody statements was objectively unreasonable in light of prevailing professional norms, we find it reasonably probable that the outcome of defendant's trial would have been different had counsel timely filed that motion. First, we conclude that a timely motion to suppress defendant's in-custody statements would have been successful because defendant made the statements after he was placed in custody and without the benefit of *Miranda* warnings.[5] Statements of an accused made during a custodial interrogation are inadmissible unless the accused voluntarily, knowingly, and intelligently waived his Fifth Amendment rights. *Miranda v Arizona*, 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966). A prosecutor may not use custodial statements as evidence unless he demonstrates that, before any questioning, the accused was warned that he had a right to remain silent, that his statements could be used against him, and that he had the right to retained or appointed counsel. *Id.*; *People v Daoud*, 462 Mich

---

[4] The motion and brief was a combined document that was less than a page and a half in length. The motion argued that a *Walker* hearing was unnecessary "because the facts and circumstances surrounding the custodial interrogation of Defendant are of record" in the preliminary examination transcript, and about which the prosecution was thoroughly knowledgeable. We also note that the prosecution too bore responsibility and should have moved in limine pretrial to have the circuit court address the issue.

[5] We also note that because this exact issue was raised, argued and decided in defendant's favor at the preliminary examination, the trial court would have been wise to hear the motion despite it being the first day of trial.

621, 633; 614 NW2d 152 (2000). *Miranda* warnings are not required unless the accused is subject to a custodial interrogation. *Miranda*, 384 US at 444, 478; *People v Elliott*, 494 Mich 292, 302; 833 NW2d 284 (2013); *Daoud*, 462 Mich at 624 n 1.

The *Miranda* Court explained that "custodial interrogation" to which its decision applied "mean[s] questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 US at 444; see also *Elliott*, 494 Mich at 305. Whether an accused was in custody is a mixed question of law and fact that must be answered independently after a review de novo of the record. *People v Cortez* (*On Remand*), 299 Mich App 679, 691; 832 NW2d 1 (2013). Whether a suspect is in custody when questioned is determined by examining the totality of the circumstances. *Id*. "A key question is whether, under the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave—that is, was there a formal arrest or a restraint on freedom of movement of the degree associated with formal arrest." *People v Vaughn*, 291 Mich App 183, 189; 804 NW2d 764 (2010), aff'd in part, vacated in part on other grounds 491 Mich 642 (2012). Courts should consider several factors, including "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Cortez* (*On Remand*), 299 Mich App at 694.

Here, Deputy Lear testified that he informed defendant he was under arrest. Officer Wright, however, testified that he never told defendant that he was under arrest, but he also never told defendant that he was *not* under arrest. Officer Wright also testified that he went to the hospital with the express intention of placing defendant under arrest on behalf of the Van Buren County Sheriff deputies and that he made the conscious decision to wait until after defendant made incriminating statements before he did so. Furthermore, Officer Leonard testified that he handcuffed defendant to the hospital bed.[6] Finally, Officer Araujo testified that he was sent to the hospital to relieve Officers Wright and Leonard and that he stood guard outside defendant's room until he was informed that defendant was no longer under arrest. All of these facts support a conclusion that defendant *was* in custody when he made the incriminating statements to police. Moreover, regardless of whether defendant was officially informed that he was under arrest, we conclude that a reasonable person in defendant's position would have believed that he was not free to leave. *Vaughn*, 291 Mich App at 189. Defendant was involved in a serious vehicle crash and was transported to the hospital by medical helicopter. At the hospital, he was surrounded by numerous police officers, and a police officer stood guard outside his hospital room while he was handcuffed to the bed. Based on all of the above facts, we conclude that a reasonable person in defendant's position would have believed that they were not at liberty to leave. *Id*. Because defendant was in custody, the police were required to advise defendant of his *Miranda* warnings and obtain a voluntarily, knowing, and intelligent waiver of his Fifth Amendment rights before interrogating him. *Miranda*, 384 US at 444, 478-479. Since defendant was not advised of and

---

[6] Because he could not testify whether his interrogation occurred before or after Officer Wright's interrogation of defendant, it is unclear whether defendant made the incriminating statements before or after he was handcuffed.

did not waive his *Miranda* rights, the statements he made at the hospital in response to police interrogation were inadmissible and should have been suppressed. *Id*.; *People v Roberts*, 292 Mich App 492, 505; 808 NW2d 290 (2011).

We also conclude that there is a reasonable probability that but for counsel's failure to timely file a motion to suppress defendant's statements, the outcome of the trial may have been different. *Pickens*, 446 Mich at 314. A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. Other than defendant's incriminating statements to police made at the hospital, the remainder of the evidence of defendant's guilt was circumstantial. The victim could not identify defendant as the robber. The photographic evidence plaintiff presented was inconclusive because it only showed a typical African American male's nose, which could have matched numerous other individuals. The lapse of time between the robbery and the traffic stop made defendant's claim that he was at a house party potentially plausible. In fact, some evidence from the robbery was missing at the time of the traffic stop and the vehicle crash, such as the landline phone stolen from the party store and the majority of the cash taken from the cash register, implying that the robbers stopped somewhere between the time of the robbery and the traffic stop. The difference between the $270 found in the vehicle and the $800 to $1,000 taken from the party store could also support defendant's contention that he was not the masked robber; therefore, only Jackson's share of the robbery proceeds were found in the vehicle. Finally, at the time of the traffic stop, defendant was not wearing any of the clothes seen on the masked robber at the party store. All of those clothes were found in the backseat of the vehicle defendant was driving. Given defendant's claim that several people shared the same vehicle, it was plausible that another individual robbed the party store and left his clothes in the backseat of the vehicle.

Given the circumstantial nature of the above evidence, we conclude that without defendant's incriminating statements to police given at the hospital, the outcome of the trial may have been different. *Pickens*, 446 Mich at 314. As defendant argues on appeal, his statements to the police were incredibly "damning." The statements not only placed him at the party store on the night of the robbery, they also identified him as the second robber. If the jury had not heard defendant's incriminating statements, it would likely have struggled with the remaining circumstantial evidence of defendant's guilt, and there existed a reasonable probability that the jury would not have convicted him of the armed robbery. We conclude that the trial court's decision to admit defendant's incriminating statements into evidence, without holding any hearings—to suppress, *Walker*, or *Ginther*—undermined confidence in the outcome of the trial court proceedings.[7]

We reverse defendant's convictions and remand for a new trial. We do not retain jurisdiction.

/s/ /Brock A. Swartzle
/s/ Jane E. Markey

---

[7] In light of our conclusion, we need not address defendant's remaining claims of error.