*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EDGAR OROZCO-ESTRADA,

        Defendant-Appellant.

UNPUBLISHED
January 13, 2022

No. 353457
Berrien Circuit Court
LC No. 2019-003546-FH

Before: BOONSTRA, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions for third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b) (force or coercion), and fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (force or coercion). The trial court sentenced defendant to 4 to 15 years' imprisonment for CSC-III and 63 days in jail, time served, for CSC-IV. We affirm defendant's convictions and sentences, but remand for the trial court to correct defendant's judgment of sentence to reflect his conviction for CSC-III was only premised on force or coercion.[1]

## I. FACTUAL BACKGROUND

The victim met defendant, a janitor at a Young Men's Christian Association (the YMCA), when the victim became a member of the YMCA in January 2019, and the two frequently engaged in casual conversation about the victim's family and sports activities. In September 2019, the victim returned to the men's locker room after exercising to shower and change clothes. When he entered the locker room, defendant was changing the trash. The victim undressed and the two began a conversation, during which the victim mentioned he had recently broken up with his

---

[1] The judgment currently indicates defendant was convicted of CSC-III under multiple variables. But defendant was only charged under a theory of force or coercion, the jury was only instructed on force or coercion, and the evidence at trial only supported a finding of guilt on the basis of force or coercion. On remand the trial court must correct this.

girlfriend. Defendant then showed the victim revealing photographs of a woman he said would be interested in the victim. As a result, the victim's penis became erect.

What happened next was largely not disputed between the victim and defendant, both of whom testified at trial. Thus, the only issue before the jury was the issue of consent. According to the victim, he attempted to hide his penis with his underwear, which was in his hand. Defendant, however, pushed the victim's hand aside, grabbed his penis, then dropped to his knees and put the victim's penis in his mouth. The victim testified that he froze and did not do anything, but he also did not consent to defendant's conduct. The incident lasted less than 10 seconds because someone opened the locker room door and defendant went back to work. The two continued to converse while the victim got dressed without showering and left, after giving defendant his phone number. Defendant told a different story. According to him, the victim revealed his erect penis in a way that suggested to defendant the victim wanted defendant to perform fellatio on the victim. Defendant conceded, however, that the victim did not provide verbal consent, but he also testified that he did not push the victim's hand out of the way.

The jury found defendant guilty and the trial court sentenced defendant, as indicated earlier. After filing his claim of appeal with this Court, defendant moved the trial court for a new trial premised on the great-weight-of-the-evidence, prosecutorial-misconduct, suppression, and ineffective-assistance-of-counsel arguments he raises on appeal. The trial court denied defendant's motion for reasons that will be discussed later. Defendant now appeals.

## II. SUFFICIENCY AND GREAT WEIGHT

Defendant argues the jury's verdicts were against the great weight of the evidence because the victim's version of events was implausible and defendant's version of events made more sense. Defendant also appears to argue, similarly, that the prosecution introduced insufficient evidence to overcome his claim of consent. We disagree.

## A. STANDARDS OF REVIEW

When considering a challenge to the sufficiency of the evidence, an appellate court "reviews the record evidence de novo in the light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 83; 777 NW2d 483 (2009). "Questions regarding the weight of the evidence and credibility of witnesses are for the jury, and this Court must not interfere with that role even when reviewing the sufficiency of the evidence." *People v Carll*, 322 Mich App 690, 696; 915 NW2d 387 (2018). Thus, "conflicts in the evidence are resolved in favor of the prosecution." *Id*.

By contrast, to be entitled to a new trial on the basis of a verdict against the great weight of the evidence,

> the evidence presented at trial must preponderate so heavily against the verdict that "it would be a miscarriage of justice to allow the verdict to stand." Conflicting testimony alone will not typically warrant reversal. Rather, where there is conflicting testimony, unless "it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury

-2-

could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." [*Roper*, 286 Mich App at 89 (citations omitted).]

## B. DISCUSSION

Defendant was convicted of CSC-III and CSC-IV, both on the basis of the aggravating factor of force or coercion. To be convicted of CSC-III, the prosecution must prove: "(1) [the] defendant engaged in sexual penetration with the victim, and (2) '[f]orce or coercion is used to accomplish the sexual penetration.' " *People v Eisen*, 296 Mich App 326, 333; 820 NW2d 229 (2012), quoting MCL 750.520d(1)(d) (second alteration in original). To be convicted of CSC-IV, the prosecution must prove that the defendant (1) engaged in sexual contact with the victim and (2) used force or coercion to accomplish the sexual contact. MCL 750.520e(1)(b). With respect to CSC-III:

> Force or coercion includes, but is not limited to, any of the following circumstances:
>
> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.
>
>          \*   \*   \*
>
> (*v*) When the actor, through concealment or by the element of surprise, is able to overcome the victim. [MCL 750.520b(1)(f).[2]]

For CSC-IV:

> Force or coercion includes, but is not limited to, any of the following circumstances:
>
> (*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.
>
>          \*   \*   \*
>
> (*v*) When the actor achieves the sexual contact through concealment or by the element of surprise. [MCL 750.520e(1)(b).]

Sexual contact "includes the intentional touching of the victim's or actor's intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification[ or] done for a sexual purpose . . . ." MCL 750.520a(q). Sexual penetration includes fellatio. MCL 750.520a(r).

---

[2] MCL 750.520d(1)(b) provides that the force or coercion required to commit CSC-III is defined by MCL 750.520b(1)(f), which addresses CSC-I.

The victim testified that he covered his penis with the underwear in his hand, but that defendant pushed the victim's hand away with one of defendant's own hands and, simultaneously, grabbed the victim's penis with defendant's other hand. After grabbing the victim's penis, defendant backed the victim against a wall, got down on his knees, and put the victim's penis in his mouth. The victim testified that he did not resist defendant because he was surprised and froze. But he also testified he did not give verbal consent to defendant and the two had never discussed having a sexual relationship in the past—indeed, the victim did not even know defendant was gay. By contrast, defendant testified the victim implicitly invited his sexual conduct by revealing his erect penis and thrusting his hips toward defendant. In resolving defendant's motion for a new trial, the trial court denied defendant relief on the basis of his great-weight-of-the-evidence argument because the victim's testimony that he froze instead of resisting was a common occurrence in sexual assault cases and the victim had given defendant no indication that he was interested in a sexual encounter.

The prosecution introduced sufficient evidence from which a rational trier of fact could find CSC-III and CSC-IV proved beyond a reasonable doubt. A rational trier of fact could have found that by grabbing the victim's penis, defendant engaged in sexual contact. MCL 750.520a(q). Further, by putting the victim's penis in his mouth, defendant engaged in a sexual penetration. MCL 750.520a(r). Indeed, defendant does not even contest these two points. Further, by pushing the victim's hand aside, defendant completed the sexual contact and sexual penetration by "overcom[ing] the victim through the actual application of physical force." MCL 750.520b(1)(f)(*i*); MCL 750.520e(1)(b). Alternatively, a rational trier of fact could have concluded defendant accomplished the sexual contact and sexual penetration "by the element of surprise" given the victim's testimony that he froze because he did not know what to do. MCL 750.520b(1)(f)(*i*); MCL 750.520e(1)(b). While defendant testified that he did not push the victim's hand aside and that the victim invited him to engage in the sexual conduct by thrusting his hips out, "conflicts in the evidence are resolved in favor of the prosecution." *Carll*, 322 Mich App at 696. Thus, there was sufficient evidence to support both of defendant's convictions.

For the same reasons, the jury's verdicts were not against the great weight of the evidence. Defendant attempts to avoid this conclusion by arguing that the victim's testimony was "very implausible" because it would have been "very difficult" to push away the victim's hand, grab the victim's penis simultaneously, and then put the victim's penis in his mouth while also backing him against a wall. Presumably, defendant is attempting to convince us that we need not defer to the jury's determination of the credibility of the victim because his testimony "contradicted indisputable physical facts or defied physical realities." *Roper*, 286 Mich App at 89 (citations omitted). But there was nothing physically unrealistic about the victim's version of events. Defendant could have used one hand to move the victim's hand and the other hand to grab the victim's penis. In addition, defendant could have walked forward, forcing the victim to walk backward, while holding the victim's penis, then put the victim's penis in his mouth. And to the extent defendant's argument is premised on the victim's failure to resist, as the trial court noted in resolving defendant's motion for a new trial, victims often freeze when confronted with unwanted sexual conduct. Thus, the victim's response here did not defy physical realities. Accordingly, the jury's verdicts were not against the great weight of the evidence.

## III. PROSECUTORIAL MISCONDUCT

Defendant raises five instances in which the prosecution elicited testimony, without objection, and argues that he was deprived of a fair trial. We disagree.

### A. PRESERVATION AND STANDARD OF REVIEW

Defendant asserts in his brief on appeal that he preserved his claims of error by raising them in his motion for a new trial. While defendant did raise these claims of error in his motion for a new trial, "[i]n order to preserve an issue of prosecutorial misconduct, a defendant must *contemporaneously* object *and* request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010) (emphasis added). Defendant did not contemporaneously object to any of the purported errors or request curative instructions. Therefore, these issues are unpreserved.

"Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). To be entitled to relief on the basis of plain error, a defendant must meet four requirements: (1) error occurred; (2) the error was plain, i.e., clear or obvious; (3) the error affected the outcome of the lower court proceedings; and (4) the error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

### B. DISCUSSION

A prosecutor's responsibility is to not merely obtain convictions, but to seek justice. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). As such, "the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. Whether the prosecution committed misconduct is determined on a case-by-case basis after examining the entire record and evaluating the prosecution's conduct in context. *Id*. at 64. "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id*. at 70.

Defendant's first claim of prosecutorial misconduct is premised on the following exchange between the prosecution and the victim at trial:

> [*Prosecution*:] Why were you willing to continue through this process and come to court today?

> [*The Victim*:] 'Cause if he does it to other people what was the point of me ever talking about it in the first p1ace. He needs to be convicted for it.

Defendant argues this testimony was inadmissible and "prompted the jury [to] convict him out of fear that he might commit future crimes rather than whether he committed the alleged offenses." In addressing this argument in defendant's motion for a new trial, the trial court noted this line of questioning was proper to rebut defense counsel's suggestions during jury selection and his opening statement that the victim was only testifying because of his parents. The court also

concluded the effect on the jury was, at most, minimal since most victims want the defendant to be convicted.

Defendant's argument is unpersuasive. First, other than MRE 401 and MRE 403, defendant has not identified a rule of evidence violated by this testimony. MRE 401 cannot be violated; it simply defines what constitutes relevant evidence. Moreover, as the sole victim and eyewitness, the victim's motive for testifying was probative of his credibility, and the credibility of a witness is almost always relevant. *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020) ("Credibility of a witness is almost always at issue, and, thus, evidence bearing on that credibility is always relevant."). Thus, MRE 402—which prohibits the admission of irrelevant evidence—was not violated by admitting the victim's statement. And for the reasons identified by the trial court, MRE 403 was not violated because the evidence was not substantially more prejudicial than probative. The victim's testimony provided a compelling reason for him to agree to testify at trial, and the potential for the jury to become concerned defendant may reoffend if not convicted was, as the trial court noted, minimal. It likely occurs to most juries that a defendant may reoffend if not found guilty, but the jury was instructed to determine guilt on the basis of the elements of the offense, and juries are presumed to follow their instructions. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Therefore, any unfair prejudice did not substantially outweigh the evidence's probative value. And even if the unfair prejudice substantially outweighed the probative value, this was a good-faith attempt to elicit admissible evidence that cannot be the basis of prosecutorial misconduct. See *Dobek*, 274 Mich App at 74. Accordingly, defendant was not denied a fair trial, let alone plainly so in a manner that affected the outcome of the proceedings.

Defendant's second claim of prosecutorial misconduct pertains to the following exchange between the prosecution and the victim at trial:

> [*Prosecution*:] Did you ever learn whether or not he was still employed there after this happened?
>
> [*The Victim*:] I learned that he was fired.

Defendant argues that the victim's testimony was inadmissible hearsay and unfairly prejudicial because it portrayed defendant in a negative manner and disparaged defendant by interjecting the YMCA's opinion into the minds of the jury. Agreeing the testimony was hearsay, the trial court, nevertheless, concluded the unfair prejudice was "minimal to nonexistent" because defendant "cleared up the fact" by testifying that he resigned and, in light of defendant's testimony, the jury could have simply concluded defendant was fired for engaging in consensual sex at work.

Again, defendant's argument is unpersuasive. As an initial matter, unless the victim learned this information through defendant himself, it was likely hearsay in violation of MRE 802 absent a limiting instruction. However, the prosecution's questioning must be considered in context. *Dobek*, 274 Mich App at 64. The prosecution was in the midst of inquiring as to the victim's response to defendant's conduct. Specifically, it is clear the prosecution was seeking to obtain testimony that, even though the victim knew defendant was no longer employed at the YMCA, he nevertheless chose not to return because of the trauma from this incident. This, in turn, made the victim's testimony more credible. Thus, it did not matter whether defendant was fired or quit; the prosecution merely needed testimony that the victim *thought* defendant was no longer

employed at the YMCA. Because the prosecution did not need the victim's testimony about defendant's employment status for the truth of the matter asserted, the admission of this testimony would not have violated the rules of evidence had defendant timely objected and requested a limiting instruction. MRE 801(c). See also MRE 105 (regarding limiting instructions). Accordingly, this was a good-faith effort to obtain admissible evidence that cannot be prosecutorial misconduct. See *Dobek*, 274 Mich App at 70.

Moreover, even assuming prosecutorial misconduct, our review is limited to plain error affecting substantial rights, and defendant has not demonstrated the lack of a limiting instruction affected the outcome of the proceedings. The probability that the jury, in the context of considering the victim's response to defendant's conduct, gave weight to the YMCA's purported decision to fire defendant—which could have been because even consensual sex while at work is generally frowned upon—is slim.

Defendant's third claim of prosecutorial misconduct is based on the victim's testimony about text messages defendant sent the victim. Before introducing a screenshot of the three messages[3] defendant later admitted to sending to the victim, the prosecution questioned the victim regarding his memory of the content of the messages. Regarding the last two messages, the victim recalled:

> [O]ne of 'em was the effect of: She still is asking me for your number—talking about the girl that had been in that picture—do you want me to give it to her? And then the second one was: I'm sorry. Please don't tell anybody. *Like, it was an apology message knowing that he screwed up*.

Defendant argues the italicized portion of the victim's testimony was conjecture and improper opinion testimony because the victim had no way to know how defendant felt about the incident. The trial court concluded this alleged error did not amount to prosecutorial misconduct because the victim was attempting to articulate from memory what the message said and appeared to have blurred his memory of the message with his memory of the first message, which indicated they could keep the incident a secret.

Defendant's argument is unpersuasive. First, as the trial court noted, the victim was testifying from memory at this point and attempting to convey to the jury his recollection of the content of the text messages. Thus, the victim's testimony fell within the confines of a lay opinion under MRE 701 since it was "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' [sic] testimony or the determination of a fact in issue." Second, without the message in front of him, it very well could have been the victim's recollection that defendant explicitly stated that he "screwed up." Finally, keeping in mind defendant has raised

---

[3] The screenshot was provided on appeal and indicates the first message was received by the victim's phone at 4:28 p.m. and read: "Can I suxk [sic] you again? We can keep this as a secret I let you nutt [sic] in my mouth[.]" The victim's phone received two more messages from defendant at 5:38 p.m. The first message read: "Brother she wants your number do you give me permission to give it to her?" The second message at 5:38 p.m. read: "And I'm sorry bro please forgive me please☹[.]"

a claim of *prosecutorial* misconduct, the prosecution did not invite the victim to opine about defendant's state of mind. Accordingly, no error occurred because this was a good-faith effort to obtain admissible evidence. See *Dobek*, 274 Mich App at 70. And even if error did occur, the exact content of defendant's messages was later admitted and provided to the jury, giving the jury the opportunity to determine for itself whether defendant acknowledged that he "screwed up." Thus, any prejudice was minimal and defendant cannot establish plain error affecting his substantial rights.

For defendant's fourth claim of prosecutorial misconduct, he takes issue with the following testimony:

> [*Prosecution*:] How do you feel, about [the victim's] response to what happened to him that day?

> [*The Victim's Mother*:] I couldn't be more proud of [the victim]. He handled himself very well given the circumstances. He didn't hurt the defendant. You know, he didn't just react and lash out. He didn't wait any amount of time to think about hiding what had happened. He was very open with us and he was very upset by what had happened.

Defendant argues this was improper character testimony and bolstering of the victim's credibility. The trial court agreed this evidence was likely inadmissible and that an objection would have been sustained, but concluded that the statement did not affect the outcome of the proceedings because it added little to the proofs. Defendant has not established plain error affecting his substantial rights. Like the prosecution on appeal, we can deduce no way in which the prosecution could have expected relevant, admissible evidence to result from its question. However, this testimony did not deprive defendant of a fair trial or affect the outcome of the proceedings. Its prejudicial effect was negligible given the admissible testimony the victim's mother had already provided that demonstrated she believed the victim. Thus, there was little risk of an impact on the jury's decision.

For his fifth claim of prosecutorial misconduct, defendant argues the prosecution admitted impermissible hearsay and opinion testimony that bolstered the victim's credibility when it asked Trooper Andrew Allen Ruch—who was present throughout the trial—whether the victim's initial statement was "essentially" what the victim testified to at trial, to which Trooper Ruch responded, "It was—It was consistent." The trial court agreed this testimony was inadmissible hearsay and noted it would have sustained an objection had one been made. However, the court concluded, given the strength of the evidence against defendant, Trooper Ruch's testimony did not affect the outcome of the proceedings.

Again, defendant has failed to establish a plain error affecting his substantial rights. The trial court was correct that this testimony was inadmissible hearsay not within any exception, and the prosecution should have known it. This error was plain. By testifying that the victim's testimony was consistent with his initial statement to the police, Trooper Ruch told the jury what the victim's out-of-court statement was in violation of the rule against hearsay. See MRE 402. However, given the evidence against defendant, the likelihood that the jury placed much weight on this testimony is minimal. The victim himself testified about the incident, Trooper Ruch and

the victim's mother testified about how emotional the victim was shortly after the incident, and defendant's own text messages supported the jury's verdicts. Indeed, that the victim's statements to Trooper Ruch were consistent with his trial testimony was entirely within defendant's theory of the case that the victim decided to make up the incident before even calling his mother. Thus, this error did not deprive defendant of a fair trial, nor did it affect the outcome of the proceedings.

Moreover, "this Court cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Bailey*, 310 Mich App 703, 721; 873 NW2d 855 (2015) (quotation marks and citation omitted). Defendant makes no argument regarding whether a curative instruction could have alleviated what little prejudicial effect his claimed errors had. Moreover, each of these claimed errors were tiny, inconsequential blips in defendant's trial. Had defendant objected when the evidence was admitted, the trial court could have performed its function by determining in the first instance whether the challenged testimony was admissible and instructed the jury accordingly. Therefore, even assuming error, defendant is not entitled to relief.

## IV. SUPPRESSION OF DEFENDANT'S STATEMENTS

Defendant argues his statements to Trooper Ruch and Trooper Jeff Baublit, which were recorded and played for the jury, were inadmissible because he was not informed of his *Miranda*[4] rights. With respect to the issue of custody, defendant argues he did not understand that he was free to refuse to answer questions or to leave because English is not his first language. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

To preserve a challenge to the admission of a defendant's statements to the police on the basis of a *Miranda* violation, a defendant must move the trial court to suppress the statements and request a *Walker*[5] hearing. See *People v Whitehead*, 238 Mich App 1, 7 n 5; 604 NW2d 737 (1999) ("Ordinarily the request for a *Walker* hearing would preserve only arguments regarding the voluntariness of a confession."). In addition, "[a] motion to suppress evidence must be made prior to trial or, within the trial court's discretion, at trial." *People v Gentner, Inc*, 262 Mich App 363, 368; 686 NW2d 752 (2004). Defendant asserts in his brief on appeal that this issue is preserved because he raised it in his motion for a new trial. Defendant also states: "At trial, defense counsel began to raise this issue but this Court [sic: the trial court] discontinued that line of questioning since a motion was not filed prior to trial." A motion for a new trial is far too late to preserve a challenge to statements made in violation of *Miranda*. *Whitehead*, 238 Mich at 7 n 5. Indeed, even raising the issue at trial would have been too late. See *People v Littlejohn*, 197 Mich App 220, 222; 495 NW2d 171 (1992) ("Denial of a *pretrial* motion for a *Walker* hearing constitutes error.") (emphasis added). Moreover, according to the transcript, defendant never attempted to raise this challenge at trial. Instead, defense counsel appears to have attempted to convince the

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[5] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

jury not to believe defendant's recorded statements to the police by asking about whether defendant knew of his constitutional rights at the time of the interrogation, and the trial court sustained two objections to such testimony as irrelevant. This was well after Trooper Ruch testified about defendant's statements and the recording of defendant's statements was played for the jury, and far from a legal objection to the admission of evidence. And even assuming this was an attempt at suppression, defendant has made no argument that the trial court abused its discretion by denying a motion to suppress in the midst of trial that could have been raised before trial. Therefore, this issue is unpreserved.

"Whether a person is in custody for purposes of the *Miranda* warnings requirement is a mixed question of law and fact that must be answered independently after a review of the record de novo." *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013). However, unpreserved *Miranda* claims are reviewed for plain error affecting substantial rights. *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009), aff'd on partial reh 485 Mich 868 (2009).

## B. DISCUSSION

Under the state and federal constitutions, no person may be compelled to be a witness against himself or herself. *Cortez*, 299 Mich App at 691, citing US Const, Am V; Const 1963, art 1, § 17. Due to the coercive nature of police custodial interrogations, the prosecution may not introduce a defendant's statements to the police while in custody unless the defendant is first apprised of several rights—known colloquially as a *Miranda* warning. *People v Vaughn*, 291 Mich App 183, 188-189; 804 NW2d 764 (2010), aff'd in part, vacated in part on other grounds 491 Mich 642 (2012). However, as the rule suggests, the police need only give a *Miranda* warning if the defendant is in custody and subjected to questioning by the police. *People v Coomer*, 245 Mich App 206, 219; 627 NW2d 612 (2001). There is no doubt defendant was subjected to questioning by the police without first being given a *Miranda* warning. At issue is whether defendant was in custody at the time.

"To determine whether a defendant was in custody at the time of the interrogation, we look at the totality of the circumstances, with the key question being whether the accused reasonably could have believed that []he was not free to leave." *Id*. Put another way, a defendant was not in custody if, "under the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave—that is, [there was not] a formal arrest or a restraint on freedom of movement of the degree associated with formal arrest." *Vaughn*, 291 Mich App at 189. In weighing the totality of the circumstances, several factors are commonly considered, including "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Cortez*, 299 Mich App at 694.

A few hours after the incident in the YMCA locker room, defendant agreed to meet Troopers Ruch and Baublit at a state police station. The entirety of defendant's interaction with the troopers was audio and video recorded from the troopers' dashcam, and the recording was played for the jury and provided on appeal. When he arrived, Trooper Ruch indicated they would

talk in his police vehicle behind the police station.[6] Defendant sat in the front passenger seat while Trooper Ruch drove and Trooper Baublit sat in the backseat. While driving to the back of the station, Trooper Ruch stated that defendant was not under arrest and he was free to leave at any time. Defendant indicated he understood. The troopers then interviewed defendant for under a half hour, in English, before defendant exited the vehicle and was permitted to leave. The trial court did not directly address this claim, however, in addressing defendant's argument that defense counsel provided ineffective assistance, which will be addressed later, the trial court noted the video made clear that defendant understood English, thus, he understood Trooper Ruch's notice that he was not under arrest and was free to leave. Therefore, the court would have denied any motion to suppress on the basis of defendant's *Miranda* rights being violated, so any such motion would have been futile and could not be the basis for relief.

From our review of the dashcam footage, it is clear defendant was not in custody at the time of his police interview. By focusing on the fact that English is not his first language, defendant almost seems to concede that the average person would have understood he or she was not in custody under the circumstances. Indeed, except for the location of the interview, which only partially supports the conclusion that defendant was in custody, the circumstances clearly indicate defendant was not in custody. First, defendant was not formally arrested or brought to the location of the interview. Instead, he voluntarily met the troopers outside a state police station and entered the troopers' vehicle. See *People v Mendez*, 225 Mich App 381, 383; 571 NW2d 528 (1997), citing *Oregon v Mathiason*, 429 US 492; 97 S Ct 711; 50 L Ed 2d 714 (1977) (noting the defendant voluntarily went to the police station for questioning in concluding the defendant was not in custody). Second, defendant sat in the front of the vehicle instead of the back where detainees are generally held. Third, before questioning defendant, Trooper Ruch informed defendant that he did not have to answer any questions and that he was free to get out of the vehicle at any time. See *Mendez*, 225 Mich App at 383 (considering the fact that the officers informed the defendant he was not under arrest). Defendant affirmed that he understood Trooper Ruch's statement. Fourth, the interview was short, lasting less than half an hour. See *Mathiason*, 429 US at 495 (noting a police interview lasted a half-hour). And fifth, defendant was permitted to leave after the interview, and did so without any express permission to leave the vehicle. Cf. *People v Barritt*, 325 Mich App 556, 579; 926 NW2d 811 (2018) ("Because defendant was not released at the end of questioning, this factor weighs in favor of a finding of custody.").

Moreover, defendant's reliance on the fact that English is not his first language is unpersuasive. At no point during his interview did defendant appear to have trouble understanding the troopers. Indeed, he spoke very clear English himself and provided answers that were responsive to the questions posed to him in English. Given the totality of the circumstances, a reasonable person would have felt free to terminate the interview and leave. *Vaughn*, 291 Mich App at 189. Accordingly, defendant was not in custody, the troopers were not obligated to provide defendant with a *Miranda* warning, and defendant's right to be free from self-incrimination was not violated. *Coomer*, 245 Mich App at 219.

---

[6] From the dashcam footage as Trooper Ruch pulled up to the police station, it appears defendant was accompanied to the station by other individuals.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues his trial counsel was constitutionally ineffective because he failed to object to the five alleged instances of prosecutorial misconduct discussed earlier and failed to move to suppress defendant's recorded statements to Troopers Ruch and Baublit. We disagree.

### A. STANDARD OF REVIEW

A claim of ineffective assistance of counsel generally presents a mixed question of fact and constitutional law, with the trial court's findings of fact reviewed for clear error and questions of law reviewed de novo. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). However, when the trial court did not hold an evidentiary hearing, there are no findings to consider, so review is for mistakes apparent on the record. *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

### B. DISCUSSION

Criminal defendants have a constitutional right to the effective assistance of counsel. *Heft*, 299 Mich App at 80, citing US Const, Am VI; Const 1963, art 1, § 20. Defense counsel is presumed to provide effective assistance, and a defendant bears a heavy burden to overcome that presumption. *Solloway*, 316 Mich App at 188. To prevail on a claim of ineffective assistance, a defendant must satisfy two prongs: "(1) counsel's performance was deficient, meaning that it fell below an objective standard of reasonableness, and (2) but for counsel's error, there is a reasonable probability that the outcome of the defendant's trial would have been different." *Id.*

The trial court denied defendant a new trial on the basis of his claim of ineffective assistance of counsel. With respect to his claim that defense counsel was ineffective for failing to move to suppress defendant's interview with the troopers, as noted, the trial court concluded it would have denied any such motion and noted defense counsel cannot be ineffective for failing to raise a futile argument. The trial court concluded the same rule applied to defendant's claims of prosecutorial misconduct premised on evidentiary admissions the court found not to be erroneous. The court also concluded defense counsel could have had a strategic reason for failing to object to the prosecutorial-misconduct issues, such as preferring not to draw additional attention to them. Finally, the court concluded defendant's claims of ineffective assistance premised on evidentiary admissions to which the court would have sustained an objection did not prejudice defendant, so defense counsel's failure to object also did not prejudice defendant. Accordingly, the court denied relief on this basis.

Defendant has not satisfied his burden for establishing ineffective assistance of counsel. With respect to the suppression of defendant's statements to the troopers and the first and third claims of prosecutorial misconduct—relating to why the victim agreed to testify and the victim's memory of defendant's text message, respectively—defense counsel did not perform deficiently by failing to object because objections would have been futile. See *Heft*, 299 Mich App at 81. With respect to the remainder of defendant's claims of prosecutorial misconduct, defendant has not rebutted the presumption that defense counsel engaged in sound trial strategy. See *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). First, counsel likely concluded he had no need to object to Trooper Anderson's testimony that the victim's initial statement was consistent

with the victim's trial testimony since this aligned perfectly with the theory of the case counsel presented to the jury. Second, counsel may have concluded that objecting to the testimony of the victim's mother served little purpose other than to seem adversarial in light of the minimal impact it was likely to have on the jury. Third, counsel may not have been concerned about the victim's testimony that defendant was fired since he knew defendant would be testifying that he quit, casting doubt on the victim's credibility, and the jury could have concluded defendant was fired for engaging in consensual sexual activity at work. In other words, once again, this testimony was consistent with defendant's theory of the case, if inconsistent with defendant's testimony. For these reasons, defendant has not established that his counsel performed deficiently by failing to object to each of these evidentiary errors. Moreover, even assuming defense counsel performed deficiently by failing to object, defendant cannot establish that he was prejudiced by these errors as each was brief, fairly inconsequential, and substantially outweighed by the strength of the evidence against defendant.

## VI. DOUBLE JEOPARDY

Defendant's double-jeopardy argument is somewhat unclear, but he seems to argue he could not be convicted of CSC-III and CSC-IV because he only engaged in a single sexual act. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

A defendant must raise a double-jeopardy challenge before the trial court to preserve the issue for appellate review. *People v Barber*, 332 Mich App 707, 712; 958 NW2d 288 (2020). Defendant did not raise his double-jeopardy challenge below. Therefore, this issue is unpreserved. Nevertheless, "a double jeopardy issue presents a significant constitutional question that will be considered on appeal regardless of whether the defendant raised it before the trial court." *Id.* (quotation marks and citation omitted). We review an unpreserved double-jeopardy claim for plain error affecting substantial rights. *Id.* at 713.

## B. DISCUSSION

The United States and Michigan Constitutions prohibit an individual from twice being put in jeopardy for the same offense. *People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015). See also US Const, Am V; Const 1963, art 1, § 15. This prohibition includes "three related protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense." *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007) (quotation marks and citation omitted). Only the third protection—known as the multiple punishments strand—is at issue here since defendant was only subjected to a single prosecution.

"The multiple punishments strand of double jeopardy is designed to ensure that courts confine their sentences to the limits established by the Legislature and therefore acts as a restraint on the prosecutor and the Courts." *Miller*, 498 Mich at 17-18 (quotation marks and citation omitted). Thus, whether two offenses are the "same offense" for purposes of the multiple punishments strand depends on whether the Legislature intended to permit successive punishment for both offenses. *Id.* Unfortunately, however, the Legislature "does not always clearly indicate

its intent with regard to the permissibility of multiple punishments." *Id*. at 19. When such is the case, "Michigan courts apply the 'abstract legal elements' test articulated in [*People v Ream*, 481 Mich 223; 750 NW2d 536 (2008)], to ascertain whether the Legislature intended to classify two offenses as the 'same offense' for double jeopardy purposes." *Miller*, 498 Mich at 19. Under the abstract legal elements test, two offenses are not the same offense if each offense has an element the other does not. *Ream*, 481 Mich at 240.

Defendant's argument ignores the fact that he engaged in two distinct acts, each prohibited by the Legislature. When he grabbed the victim's penis with his hand, he committed the offense of CSC-IV. He then committed the offense of CSC-III by putting the victim's penis in his mouth. Because he engaged in two separate acts, double jeopardy is not implicated under these facts. That one was immediately followed by the other does not merge the two into one act. Moreover, even assuming defendant only committed a single act, CSC-III and CSC-IV each have an element the other does not. CSC-III, of course, requires a sexual penetration; CSC-IV does not. CSC-IV requires a sexual contact while CSC-III does not.[7] See *People v Duenaz*, 306 Mich App 85, 107; 854 NW2d 531 (2014) (holding dual convictions for first-degree criminal sexual conduct and second-degree criminal sexual conduct did not violate a defendant's double-jeopardy rights because one requires a sexual penetration while the other requires a sexual contact, which includes the requirement of a sexual purpose). Accordingly, defendant's dual convictions did not violate his double-jeopardy rights.

## VII. CONCLUSION

For the foregoing reasons, we affirm defendant's convictions and sentences. However, we remand to the trial court for the ministerial task of correcting defendant's judgment of sentence to

---

[7] At first glance, it may seem that CSC-III does require sexual contact as it is unlikely under the vast majority of circumstances for a defendant to engage in sexual penetration without necessarily engaging in sexual contact—both as that phrase is commonly understood and as defined by the statute. But to engage in sexual contact under the statute, a jury must find the defendant caused an intentional touching with intimate body parts in a manner that

> can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for:
>
> (*i*) Revenge.
>
> (*ii*) To inflict humiliation.
>
> (*iii*) Out of anger. [MCL 750.520a(q).]

With CSC-III, the jury need not consider whether the sexual penetration could reasonably be construed in this manner. MCL 750.520a(r). Thus, each contains an element the other does not, even though, factually, it is likely impossible to complete a sexual penetration without also completing a sexual contact.

indicate his CSC-III conviction was premised on force or coercion only.  We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan